A91A0976. SELLERS et al. v. NODVIN.
(429 SE2d 138)

Andrews, Judge.

This is the second appearance of this case before us. In *Sellers v. Nodvin*, 201 Ga. App. 550 (411 SE2d 723) (1991), we affirmed the trial court's dismissal of the appeal, which decision was reversed in *Sellers v. Nodvin*, 262 Ga. 205 (415 SE2d 908) (1992). Accordingly, our decision with respect to that issue is vacated and the judgment of the Supreme Court is made the judgment of this court.

We now address appellants' additional enumerations of error regarding the underlying default judgment against them. The case arises out of the following facts. Plaintiff/appellee, Marvin Nodvin

d/b/a The Nodvin Firm, filed the complaint in this case on June 8, 1990 against defendants/appellants Michael Sellers, William Atkinson IV, Harold Jose and Sellers, Atkinson & Jose, P.C. to recover damages arising out of his legal representation of them. With the complaint he filed and served requests for production of documents to the defendants. The defendants were served on June 18 and 19, 1990.

On July 9, 1990, defendants filed a motion for a protective order with regard to the discovery requests, based on the fact that the case from which Nodvin claimed fees was still pending. Nodvin objected to the motion and claimed that the information sought in the requests was outside the scope of the issues in the pending litigation.

On July 16, 1990, defendants filed their answer to the complaint. On that same date, Nodvin filed notices to produce to the defendants.

On August 2, 1990, the trial court issued an order denying the defendants' motion to stay and ordering that defendants comply with the requests for production of documents and produce the documents requested within 15 days. The order also instructed defendants to pay Nodvin $1,893.35.

On September 6, 1990, Nodvin filed a motion requesting an extension of time within which to respond to discovery which had been served on him and contemporaneously therewith filed a motion for sanctions for defendants' failure to respond to the discovery.

The court issued a rule nisi setting a hearing on the motion for sanctions for September 24, 1990. The court also granted Nodvin's motion for an extension of time within which to respond to defendants' discovery until his motion for sanctions was heard.

On September 24, 1990, the defendants filed "a motion for continuance of hearing" for 30 days and a notice to take a deposition. In the motion to postpone the hearing, defendants stated that before responding to the discovery, they wanted to take plaintiff and plaintiff's counsel's depositions. Also on that date, defendants filed a reply to plaintiff's motion to stay in which they asserted that "plaintiffs have acted in bad faith in seeking this order while soliciting settlement during the period of time when the parties had mutually suspended and deferred discovery though neither plaintiff nor defendants had waived any discovery rights." Defendants represented that they were "ready, willing and able" to make the discovery documents available. Defendants also submitted the affidavit of John Feagin, defendants' counsel, in which he swore that settlement discussions in the case were ongoing.

Also on September 24, 1990, Nodvin filed his own affidavit in which he recounted the interactions of the parties since July regarding settlement in the case. He stated that on July 26, 1990, prior to the hearing on their motion to stay, defendants' counsel had approached him, seeking to enter into settlement negotiations. Nodvin

stated that defendants had continued attempting to negotiate settlement through August and September, and that on August 29, 1990, he had written a letter rejecting defendants' offer and stating that "[a]s you also are aware, the Order of August 2, 1990, has not been complied with and has not been waived by us."

On September 24, 1990, the hearing on Nodvin's motion for sanctions was held and the trial court ordered defendants to settle the claims within two days or suffer a default judgment. Subsequent to that hearing, on September 25, 1990, defendants filed, for the first time, a "response to plaintiff's first request for production of documents." On September 26, 1990 defendants filed a motion to "stay, modify and vacate the court's order."

On September 27, 1990, the trial court issued an "order and judgment as to plaintiff's motion for sanctions." In that document, the court made explicit findings of fact regarding the interactions between the parties and concluded that defendants had wilfully disregarded the court order and wilfully attempted to deny Nodvin the discovery sought. Thus, pursuant to OCGA § 9-11-37, the trial court struck defendants' answer, declared defendants in default and entered judgment in favor of Nodvin. The court allowed an additional ten days for affidavits to be submitted regarding expenses.

Defendants filed their first notice of appeal on October 3, 1990. On December 17, 1990, Nodvin filed a motion to dismiss the appeal on the basis that defendants had failed to file a transcript as required by OCGA § 5-6-42. The trial court held a hearing and granted the motion to dismiss because of the delay in the filing of the transcript. From that order, defendants filed the instant appeal enumerating as error both the dismissal of the appeal and various matters underlying the judgment against them.

1. In their first enumeration, appellants claim that the trial court erred in finding them in wilful violation of the discovery order and imposing the sanction of a default judgment against them. They argue that because the parties were engaged in settlement negotiations, the trial court abused its discretion by finding a wilful failure to respond to the discovery. They further argue that their failure to respond to the discovery was based on: 1) an implicit understanding that discovery was being held in abeyance; 2) a good faith reliance on an implicit agreement to delay discovery; 3) a misunderstanding between counsel regarding the discovery; 4) having been "set up" by Nodvin's counsel into overlooking the legal requirement.

Appellants' enumeration is without merit and we find no abuse of the trial court's discretion here. "A very broad discretion is granted judges in applying sanctions against disobedient parties in order to assure compliance with the orders of the courts. By OCGA § 9-11-37 (b) (2) (C) the courts are specifically granted the discretion to dismiss

complaints or to render default judgments against disobedient parties. This applies to the disobeying of an order to produce. Historically it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse. This policy is applicable to a trial judge's exercise of the broad discretionary powers authorized under the discovery provisions of the Civil Practice Act." (Citations and punctuation omitted.) *Joel v. Duet Holdings*, 181 Ga. App. 705, 707 (353 SE2d 548) (1987); see also *Peoples v. Yu*, 184 Ga. App. 252 (361 SE2d 244) (1987). We will not address the additional matters which appellants seek to argue which are not enumerated as error.

2. In their second enumeration, appellants claim that the trial court erred in conducting a hearing on Nodvin's motion for discovery sanctions in that he did not file a certificate — that he attempted to resolve discovery disputes as required by Uniform Superior Court Rule 6.4 (B). There is no merit to this argument, since it was pursuant to appellants' own motion for a protective order that the court's August 2 order directing appellants to respond to the discovery issued. Defendants failed to comply with the court order and therefore it was unnecessary for Nodvin to file a certificate prior to filing the motion for sanctions. See generally *Green v. Snellings*, 260 Ga. 751 (1) (400 SE2d 2) (1991).

3. In appellants' third and fourth enumerations, which they argue together, they cite *Hazlett &c. Constr. Co. v. Womack Constr. Co.*, 181 Ga. App. 25 (351 SE2d 218) (1986), and claim that the trial court erred in finding Nodvin's contract claim to be liquidated and in denying the defendants' right to a trial on the issue of damages.

Here, the complaint alleged that defendants had entered into a contract with Nodvin for legal services. The complaint alleged that the agreement between the parties was for "regular charges" for expenses, plus interest on "any unpaid balance of an invoice rendered for the services and expenses for the preceding month." Nodvin alleged that he performed the services, and that the defendants were, jointly and severally, indebted to him in the amount of $60,788.83 plus interest from June 1, 1990. In their answer, defendants denied the allegations concerning the amount owed to Nodvin, although they admitted that they orally agreed to let him represent them regarding certain matters. It is unclear from the record whether the fee arrangement with Nodvin was in writing.

OCGA § 9-11-55 (a) provides that in the event of a default, the plaintiff shall be entitled to a verdict and judgment as if every item and paragraph of the complaint were supported by proper evidence, without the intervention of a jury "unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages

before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages. . . . An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code Section."

The definition of liquidated damages is "an amount certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing; and that the term does not necessarily refer to a writing: an open account is the reverse of this." (Citations, punctuation and emphasis omitted.) *Hazlett*, supra at 26.

By statutory definition, an action on an open account is considered an action for liquidated damages. "Black['s Law Dictionary] defines an open account as one which has not been finally settled or closed, but is still running or open to future adjustment or liquidation. [Cit.] Georgia law agrees with this definition." *Welch Constr. Co. v. Quantum Group*, 188 Ga. App. 740 (1) (374 SE2d 232) (1988).

A second type of liquidated claim "would be a suit upon an account for a stated balance which, when no defense having been filed and the case having been marked in default, the correctness of the balance sued for by the plaintiff became established and fixed without the necessity of proof thereof by the plaintiff. . . ." *Hazlett*, supra at 26; see, e.g., *Ale-8-One of America v. Graphicolor Svcs.*, 166 Ga. App. 506, 508 (7) (305 SE2d 14) (1983). Black's defines an "account stated" as "[t]he settlement of an account between the parties, with a balance struck in favor of one of them; an account rendered by the creditor, and by the debtor assented to as correct, either expressly, or by implication of law from the failure to object."

In addition to the type of account, another critical fact to the determination of whether damages are liquidated for purposes of OCGA § 9-11-55 (a) is whether the amount of damages is ascertainable from the pleadings. See *Hazlett*, supra; *Welch*, supra. In the instant case, we find that the damages were unliquidated since there is no gauge by which to determine the amount of damages owed. Nodvin failed to allege an agreement to pay which allows us to calculate the amount of damages, and we have no tool with which to measure that amount. *Hazlett*, supra at 27. In his complaint, Nodvin alleges only that the defendants agreed to pay "regular charges" for the services. He does not set forth the method in which a "regular charge" was calculated, nor does he set forth a number of hours for which he is owed payment. Thus, for purposes of OCGA § 9-11-55 (a), the damages are unliquidated.

The fact of the default alone did not convert the damages into a liquidated claim. *Welch*, supra; *Hazlett*, supra. The conclusory allegations of the amount owed were not sufficient to render the damages

liquidated. Compare *Henry v. Adair Realty Co.*, 141 Ga. App. 182, 183 (1) (233 SE2d 39) (1977). Otherwise "every case where a specific amount is stated in the complaint as due and owing would be turned into a liquidated amount by the default, and the Code section's provision for trial as to damages involving unliquidated amounts in contract cases would rarely if ever occur." *Welch*, supra at 741. Accordingly, the trial court's determination that the damages alleged were liquidated was erroneous. Compare *McGuire v. Norris*, 180 Ga. App. 383 (1) (349 SE2d 261) (1986).

4. In their fifth enumeration of error, citing *Nodvin v. West*, 197 Ga. App. 92 (3) (397 SE2d 581) (1990), appellants claim that the trial court erred in awarding Nodvin one-and-one-half percent (1.5%) per month as post-judgment interest in that this amount is more than provided for in OCGA § 7-4-12. Despite our determination in Division 3, we will address this issue since it will be likely to arise on remand.

OCGA § 7-4-12 provides: "[a]ll judgments in this state shall bear interest upon the principal amount recovered at the rate of 12 percent per year unless the judgment is rendered on a written contract or obligation providing for interest at a specified rate, in which case the judgment shall bear interest at the rate specified in such contract or obligation."

As stated above, the record contains no written contract between the parties. Nevertheless, Nodvin's complaint alleges that defendants contracted, in addition to paying for his services, to pay him 1.5 percent per month interest. Because defendants' answer was stricken, this contractual provision is deemed admitted, as if supported by proper evidence. See generally *Cassidy v. Wilson*, 196 Ga. App. 6 (395 SE2d 291) (1990). Thus, this admitted provision constitutes an "obligation" under OCGA § 7-4-12 which would exempt the judgment from the post-judgment rate of 12 percent.

The case is distinguishable from both *Nodvin v. West*, supra, and *ADC Constr. Co. v. Hall*, 202 Ga. App. 119 (413 SE2d 522) (1991). In both of those cases, the court discussed the interaction between OCGA §§ 7-4-12 and 7-4-16 in situations in which no bilateral obligation had been shown. In *Nodvin*, supra, Nodvin claimed that such an agreement existed, but the court held that the evidence was insufficient to find error in the trial court's application of the standard statutory post-judgment interest rate. In *ADC Constr.*, supra, no agreement between the parties was claimed.

In the instant case, if a written contract had existed between the parties regarding the 1.5 percent monthly rate, the provisions of OCGA § 7-4-12 clearly would not have been applicable. Therefore, because of the default, and because the rate is that which is allowable under OCGA § 7-4-16, we find no error in the trial court's application

of a 1.5 percent per month post-judgment rate. See generally *Chilivis v. Rogers Oil Co.*, 135 Ga. App. 176 (3) (217 SE2d 179) (1975).

"The burden is on appellant to show error by the record, and when a portion of the evidence bearing upon the issue raised by the enumeration of errors is not brought up so that this court can make its determination from a consideration of all relevant evidence bearing thereon, an affirmance as to that issue must result." *Nodvin*, supra at 97.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 11, 1993.

*Fred L. Cavalli*, for appellants.
*Richard A. Gordon, Marvin P. Nodvin*, for appellee.